**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**DIANE M. WHALEY,**
         **Plaintiff,**

**v.**                                         **Case No: 3:08cv126/MCR/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
              **Defendant.**
_____

## REPORT AND RECOMMENDATION

        This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Whaley's application for disability insurance benefits under Title II of the Act.

        Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

        Plaintiff, Diane Whaley, filed an application for a period of disability and disability insurance benefits alleging disability beginning on January 1, 1999.  Her application was denied initially and on reconsideration and she requested a hearing

before an Administrative Law Judge (ALJ).  A hearing was held on September 16, 2006 at which Ms. Whaley was represented by counsel and testified.  A vocational expert also testified.  The ALJ rendered an unfavorable decision on March 16, 2007 (tr. 14-32) and the Appeals Council declined review (tr. 6-9), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Whaley had severe impairments of (1) status post hemilaminectomy and discectomy at L4-5, (2) status post cervical discectomies and fusions at C4-5, C5-6, and C6-7, (3) degenerative disc disease of the cervical and lumbar spine, (4) major depressive disorder, and (5) anxiety, but that she did not have a condition or combination of conditions that met or equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; that from her onset date of January 1, 1999 through December 31, 2001, her date last insured, she had the residual functional capacity for light exertion with additional non-exertional limitations of a moderate limitation in her ability to maintain attention and concentration for extended periods and in her ability to understand, remember, and carry out detailed instructions; that her past relevant work as a customer service representative and a condominium property manager did not require the performance of work-related activities precluded by her residual functional capacity, and between the alleged disability onset date through her date last insured, December 31, 2001, Ms. Whaley was not under a disability as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles

upon which the Commissioner's decision is based.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).   There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid.   *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).  Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence.  *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).   Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260;  *Miles*, 84 F.3d at 1400.  Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *Moore*, 405 F.3d at 1211 (citation omitted).  In determining whether substantial evidence exists, the court  must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence.  *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1.     Is the individual currently engaged in substantial gainful activity?

2.     Does the individual have any severe impairment?

3.     Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.     Does the individual have any impairments which prevent past relevant work?

5.     Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)).  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987).  If the Commissioner carries this burden, claimant must prove that she cannot

perform the work suggested by the Commissioner.  *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Ms. Whaley suffered a work-related injury in November 1993, and on January 21, 1994, Charles Chapleau, M.D., a neurosurgeon, performed a hemilaminectomy in her lumbar spine at the L4-5 level.  Three years later, on May 27, 1997, Dr. Chapleau performed discectomies at the C4-5 and C5-6 level in Ms. Whaley's neck. On July 27, 1998 Ms. Whaley suffered another work-related injury and on May 11, 1999 Dr. Chapleau performed a discectomy at the C6-7 level of her neck.  Dr. Chapleau continued to follow Ms. Whaley through December 7, 1999.  He noted that she was somewhat improved at her first post-surgical visit of August 11, 1999 (tr. 192) and that by the end of September 1999 she was recovered, had reached maximum medical improvement with a 10% disability, and should return to work lifting no more than 25 pounds with no overtime (tr. 190).  On October 1, 1999, the day she was to return to work, Ms. Whaley called Dr. Chapleau's office and reported that her husband had suffered a heart attack and she wanted his assistance in getting a work excuse.  Dr. Chapleau's office referred her to her husband's physician for any assistance along that line.  Ms. Whaley has not worked since.  On her last visit, December 7, 1999, Dr. Chapleau indicated that Ms. Whaley still had a fair amount of pain in her neck and some symptoms in her shoulder but that no further action was required other than symptomatic treatment.  He refilled her prescriptions but indicated that her maintenance medications could be managed by her primary care physician (tr. 184).

On February 17, 2000 Ms. Whaley saw Stephen Slobodian, M.D., an internal medicine specialist.  His notes indicate that he had initially seen Ms. Whaley in 1995 but had not seen her since then.  Ms. Whaley complained of headaches, low back

pain, pain in her arms, left hip and thigh and in her neck.  The worst pain was in her left arm.  On physical examination there was tenderness along the entire spine.  Dr. Slobodian noted that Ms. Whaley had limited range of motion in the cervical spine but that her neck moved better at other times during the evaluation.  Dr. Slobodian's conclusion was that the sensory and physical findings on examination was non anatomical (meaning not medically reliable) and that there was significant evidence of pain amplification.  He agreed with Dr. Chapleau's MMI date as well as his overall ten percent impairment rating.  Dr. Slobodian did not place any limitations on Ms. Whaley's activities but instructed her to stop smoking and to come back in two months (tr. 507-514).

Ms. Whaley returned to Dr. Slobodian on a roughly every-six-months basis thereafter.  He routinely refilled her prescriptions.  His greatest effort was directed at Ms. Whaley's addiction to tobacco.  He continuously told her to quit smoking and she regularly told him that she was quitting, or had quit, but had started again (tr. 501-506).  In May and again in November 2003, she reported flare ups of pain but overall her condition was essentially unchanged (tr. 495-498).  The last entry in Dr. Slobodian's record is 16 months later, March 7, 2005.  Dr. Slobodian's progress note indicates that Ms. Whaley had been most recently seen on December 2, 2004 but those medical notes are not in the administrative record.  In any event, in March 2005 Dr. Slobodian noted that Ms. Whaley continued to receive Toradol injections weekly which would work for several days.  She inquired about having the injections increased to twice weekly but Dr. Slobodian felt this was not indicated.  He also noted that Ms. Whaley had previously complained of pain in her legs and that EMG/NCS studies had been done in January 2005 and were read as normal (tr. 490-491).

On August 17, 2005 Dr. Slobodian wrote a letter to Ms. Whaley's attorney following a discussion with him.  Significantly, Dr. Slobodian stated:

**"It is my impression that Ms. Whaley would easily meet criteria for having been disabled on or before [12/31/01]. The patient has multiple medical issues and is status post operative intervention to the cervical and lumbar spine. She additionally has a history of depression for which she is seen by the Department of Psychiatry. The patient also had a TIA[1] occur in the past and has been having difficulties with progressive loss of vision." (Tr. 708)**

In addition to her orthopedic problems, and as noted by the ALJ, Ms. Whaley was treated for various medical conditions, including non-insulin dependent diabetes, menopause, depression, gastroesophageal reflux disease, and she had suffered a transient ischemic attack with no sequellae.

## DISCUSSION

Ms. Whaley argues that the ALJ erred in failing to credit her subjective complaints of pain, and that she was disabled from her onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Ms. Whaley was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record. The ALJ held, and Ms. Whaley does not contest, that in order to succeed on the instant application, she must prove that she was disabled no later than her date last insured, December 31, 2001. She contends that in finding her not disabled the ALJ either applied the wrong legal standard or wrongly applied the correct legal standard, and therefore should be reversed.

As this court is well aware, pain is treated by the Regulations as a symptom

---

[1]A TIA (transient ischemic attack) is a "warning stroke" or "mini-stroke" that produces stroke-like symptoms but no lasting damage.
http://www.americanheart.org/presenter.jhtml?identifier=4781

of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929.  The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[2] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215.

---

[2]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence."  *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005).   However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered.  *Marbury*, 957 at 839-840;  *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054.   Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true.  *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an  explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted).  And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.  *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s]

on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[3]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here Ms. Whaley correctly contends that there was evidence that she had an underlying medical condition.  She further contends that the record established that she had either (1) objective medical evidence confirming the severity of the alleged pain, or (2) the medical condition was of such severity that it could reasonably be expected to cause the alleged pain.  She relies primarily on the opinion of Dr. Sobodian.  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the

---

[3]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical impairments at issue; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.   Failure to do so is reversible error.  *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[4] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Here the first *Hand* requirement - an underlying medical condition - has been

---

[4]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

met.  Ms. Whaley has had multiple back and neck surgeries.  She must still meet either one of the alternative requirements.  In order to meet the first alternative, she must show that objective medical evidence *confirms* the existence of her pain.  She has not shown that the ALJ erred in this regard.  Unquestionably Ms. Whaley underwent the surgical procedures discussed above, but post-surgery there is nothing in the record, other than her continuing complaints, that *objectively confirms* her subjective complaints of pain.  A close review of Dr. Slobodian's records discloses that Ms. Whaley said her symptoms did not improve, her medications were continued, and she had great difficulty in smoking cessation.  The only *objective* test in the record relating to her post-surgical neck and back problems was an EMG/NCS of her legs done in early 2005, which was read as normal.  Beyond that, all the findings concerning her symptoms were entirely subjective.

In order to meet the second alternative, Ms. Whaley must show that her neck and back problems can be *reasonably expected* to cause *the degree of pain of which she complains*.  Again, she has not shown that the ALJ erred in this regard.  It is undisputed that the only opinion of any physician that Ms. Whaley could not work was contained in the letter Dr. Slobodian wrote in August 2005.  The ALJ discussed this letter, but found that it was entitled to little weight.  He reasoned that, first, Dr. Slobodian did not define the criteria for disability to which he referred, and second, that although he had an ongoing treatment relationship with Ms. Whaley, his records contained no objective clinical examination findings.  The ALJ also emphasized Dr. Slobodian's February 2000 notes that there was significant evidence of pain amplification on Ms. Whaley's part.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand,*

*supra,* at 1548-49.

Finally, the ALJ noted that Dr. Slobodian's opinion that Ms. Whaley met the criteria for disability was a legal question reserved to the Commissioner. The opinion by a treating physician that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims. The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner. For instance, Title 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion. *See also* Title 20 C.F.R. § 416.927(e). Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner. Title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance"). Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record. SSR 96-5p. In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do *any* work, and the physician subsequently wrote a letter saying the claimant was completely disabled.

To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician

not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters.  Moreover, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters.  These things are not properly considered by the Commissioner in determining disability.  Title 20 C.F.R. §§ 404.1566, 416.966.  For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

Finally, the court notes that Ms. Whaley relies on *Cronon v. Barnhart*, 244 F. Supp. 2d 1286 (N.D. Ala. 2003).  *Cronon* is not binding authority on this court, nor is it persuasive.  There the court found that in considering an orthopedic medical condition the ALJ erred in discounting plaintiff's subjective complaints of pain. However, the plaintiff there showed *objective* proof on her symptoms, including x-rays showing severe degenerative disc disease, positive electro-diagnostic studies, positive nerve conduction tests, and loss of grip strength, among others.  The *Cronon* court held that it was error for the ALJ to find that there were no objective findings.  That is not the case here.  If it were, this court still would not necessarily follow the court's reasoning in *Cronon*, because that court did not directly assess the ALJ's ultimate findings on plaintiff's credibility.  Here, Ms. Whaley's credibility was very much in issue because of the lack of objective findings, and because of Dr. Slobodian's finding of significant evidence of pain amplification.

The ALJ in this case considered the entire record and found that Ms. Whaley's subjective complaints of pain were not entirely credible because, again, of the lack

of objective findings and because her complaints were amplified.  This was entirely withing the ALJ's "realm of judging," *Arnold, supra*, and the decision was supported by substantial record evidence.  Ms. Whaley is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be AFFIRMED, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 6th day of February, 2009.

/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**